**HOGAN et al. v. STATE INDUSTRIAL COMMISSION et al.**

No. 12479—Opinion Filed May 16, 1922.

(Syllabus.)

1. **Master and Servant — Workmen's Compensation Law — Appeal — Questions of Fact.**

By the provisions of section 10 of the Workmen's Compensation Law (chapter 14, Session Laws 1919), the decision of the State Industrial Commission is made final as to all questions of fact; but this is so only when there is some evidence to support such decision, and where there is absolutely no evidence to support such finding and decision, the same may be reviewed as a matter of law.

2. **Same—Complaint Before Industrial Commission—Burden of Proof.**

In a proceeding before the State Industrial Commission, seeking compensation for an alleged injury, the burden of proof is upon the claimant to show by the evidence that the injury complained of was accidental and arose out of and in the course of his employment.

3. **Same—Award for Injuries—Insufficiency of Evidence.**

Evidence examined, and held, that there is no evidence to support the award.

Appeal from State Industrial Commission.

Action by T. R. Hogan, transacting business as the Wilburton Gin Company, and the United States Fidelity & Guaranty Company to review an award of workman's com-

pensation to James Otto Cherry. Reversed and remanded.

Ross & Thurman, for petitioners.

S. P. Freeling, Atty. Gen., and R. E. Wood, Asst. Atty. Gen., for State Industrial Commission.

G. B. Mitchell, for James Otto Cherry.

JOHNSON, J. The petitioners, who were the respondent and insurance carrier, respectively, have filed their petitions in this court joining the State Industrial Commission and James Otto Cherry, who was the claimant, as respondents, to review an order and award made by the State Industrial Commission in a proceeding before it designated as No. 18641, wherein James Otto Cherry was claimant and T. R. Hogan, doing business as the Wilburton Gin Company, was respondent, and United States Fidelity & Guaranty Company was insurance carrier; which order was made on June 25, 1921, and was amended by an order made on July 6, 1921, requiring the respondent and insurance carrier to pay to the claimant compensation at the rate of $8 per week for 250 weeks as for the loss of an arm, together with all medical bills. For convenience, reference will be made herein to the parties as they were named in the proceeding before the Industrial Commission.

Counsel for the respective parties agree that there is but one question here for determination, that is, Whether the relation of master and servant existed between the claimant and T. R. Hogan, transacting business as the Wilburton Gin Company, or was James Otto Cherry an employe of the respondent T. R. Hogan?

The undisputed facts, in substance, are that, on December 15, 1919, the respondent, T. R. Hogan, was operating a cotton gin at Wilburton, Okla., under the name of the Wilburton Gin Company, and on that day had in his employ a superintendent and a ginner, the latter being named Green. On that day the claimant, James Otto Cherry, hauled a load of cotton to the gin; arriving about 10 o'clock a. m., and finding a number of wagons to be unloaded ahead of him, he waited there until about 1:30 p. m., and was at that time standing in the doorway at the gin room, which contained four gin stands in a row running east and west. The west gin stand became clogged, and Green, the ginner, went to it, raised the breast, and asked Cherry, who was standing near by, to help him hold it. Thereafter the east gin became clogged and Green went to that gin stand. The additional weight of the breast being thrown on Cherry caused his hand and arm to be pulled down into the saws which so tore his hand and forearm that it was necessary to amputate his arm. Cherry had never worked around a cotton gin, and had never engaged in any other occupation than farming. Green had no authority from the respondent to employ additional help about the gin, and Cherry did not understand that Green, or anyone else, intended to pay him for rendering the assistance requested by Green, and Cherry did not expect pay for such assistance.

Section 2 of article 1, chapter 246, Session Laws 1915, as amended by section 1, chapter 14 of the Session Laws of 1919, provides that compensation provided for in the act shall be payable for injuries sustained by employes. Subdivision 3 of section 3, article 1, of the act provides that the term "employer" means persons, partnership, associations, corporations, etc. employing workmen in hazardous employment. Subdivision 4 of the said section provides that "employe" means any person in the employment of any person, firm, etc., carrying on a business covered by the act. Subdivision 8 of said section provides that "wages" means the money rate at which the service is recompensed under the contract of hiring in force at the time of the accident.

It seems to us that it obviously follows from the above provisions of the Workmen's Compensation Law that compensation is payable only where the claimant is an employe under the quoted provisions, and that the commission erred in concluding that the claimant was such employe.

In volume 1, Labatt's Master and Servant (2nd Ed.) pages 316 to 321, inclusive, this principle of law is stated as follows:

"88. Assent of Parties. Proposal and Acceptance. As in the case of other contracts, the formation of a binding contract of service may be established either by evidence which tends directly and specifically to show that one of the parties had accepted absolutely and without qualification the proposal of the other with regard to the performance of certain work, or by evidence which tends indirectly to prove the fact of acceptance—as, for example, that the alleged servant did the work in question with the consent and for the benefit of the alleged master—or that one of them, by some express declaration, recognized the other as his servant. or that he performed functions which only a person in the position of a servant was entitled to perform."

In 26 Cyc. 968, the law is as follows:

"The relation of master and servant arises only out of contract, which, except where

controlled by the statute of frauds, may be either express or implied, verbal or written; and may contain such terms and conditions as the parties see fit to make, provided they are not illegal and do not contravene public policy."

"A person who voluntarily assumes to act as the servant of another cannot recover for personal injuries as though he were in fact a servant. The fact that a volunteer was requested or ordered by a servant of his master to give his assistance will not authorize him to recover for personal injuries on the ground that he thereby became a servant of the employer, unless, by reason of his position or the necessities of the case, such servant had authority to make the request." 26 Cyc. 1085.

In the case of Hot Springs R. Co. v. Dial, 58 Ark. 318, 24 S. W. 500, the court says:

"Appellant was making up a train at its depot at Hot Springs. On the yard of the company, near the depot at a street crossing, a bridge spanned the track. Appellee, a boy 15 years of age, was standing erect upon a freight car as it passed under the bridge, and, same being too low to admit his passage in this position, he was struck upon the head, and knocked from the car, receiving a severe scalp wound, from which he suffered greatly. * * * He sues the company, alleging that he was induced to go upon the car by the conductor of appellant for the purpose of throwing off the brake. * * * Where a railroad company has not given its conductor express authority to employ help nor clothed him with the apparent authority, and there is no exigency requiring extra help, a boy of 15, who willingly obeys his request to assist on a car, is a trespasser, and if injured cannot recover from the company in the absence of willful and gross negligence. The proof shows that the conductor had no power to employ brakemen. The extent of his express authority was to control the movements of his train with such subalterns as were furnished him by the superintendent who 'employed all men working on all trains' of the company. * * * No exigency supervened, no urgent circumstances were shown, nothing to call for the exercise of implied authority."

To the same effect, see Mickleson v. New East Tintic R. Co., 23 Utah, 42, 64 Pac. 463; Langan v. Tyler, 114 Fed. Rep. 716, 51 C. C. A. 503.

"The relation of employer and employe is contractual. Like every other contractual relation, it is the product of a meeting of minds. Western Union Tel. Co. v. Northcutt, 158 Ala. 539, 48 South. 553, 132 Am. St. Rep. 38; 18 R. C. L. 490. To create the relation of employer and employe there must be an express contract, or such acts as will show unequivocally that the parties recognize one another as master and servant. 18 R. C. L. 494. It is essential to the existence of every contract of employment that it be definite and certain as to parties. Parsons v. Trask, 7 Gray (Mass.) 473, 66 Am. Dec. 502. By virtue of section 4 of the Workmen's Compensation Act, the obligation of the employer to pay, and the right of the employe to receive, compensation in accordance with the provisions of said act, becomes a part of every contract of service between every employer and employe covered by said act. Acts 1915, p. 393; Hagenback v. Leppert (Ind. App.) 117 N. E. 531. To the employe this right to compensation is a precious element of the contract. One of the considerations, and an important one, which he gives for that right, is the relinquishment by himself and his dependents of all other rights and remedies at common law or otherwise for his injury or death arising out of the employment. Section 6, W. C. A." Rogers et al. v. Rogers et al. (Ind. App.) 122 N. E. 778, 780.

The Supreme Court of Washington said:

"We think there can be no doubt of this premise, but the principles of the common law can be of little assistance to us in measuring the right of a workman to claim compensation under the industrial insurance law. It is the purpose of that law to compel the industries of the state to bear the burden of accidents occurring in their operation, and being in derogation of the common law, it cannot be construed so as to include those who do not, by words or necessary implication, come within its terms. * * * The law in its tenor and terms contemplates that the relation between employer and employe shall possess some element of certainty. It implies, if indeed it does not liberally provide, that there shall be an actual contractual relation between the parties—that is, an agreement to labor for an agreed wage or compensation." Hillestad et al. v. Industrial Insurance Commission, 80 Wash. 426, 141 Pac. 913."

There is no evidence in this record upon which to base the conclusion that the relation of master and servant existed between the respondent Hogan and the claimant, Cherry, at the time of the injury, and that being true, there can be no award justified under the Workmen's Compensation Law, and the award made by the State Industrial Commission should be vacated, and the cause is reversed and remanded to the Commission, with directions to dismiss the claim, and it is so ordered.

McNEILL, MILLER, KENNAMER, and NICHOLSON, JJ., concur.